UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Cr. No. 16-10137-LTS |
| ) | |
| (1) KENNETH BRISSETTE, and ) | |
| (2) TIMOTHY SULLIVAN ) | |
| ) | |
| Defendants ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT
TIMOTHY SULLIVAN'S MOTION TO COMPEL
AND MOTION TO DISQUALIFY**

The United States of America, by and through its attorneys, Carmen M. Ortiz, United States Attorney, and Assistant U.S. Attorneys Laura J. Kaplan and Kristina E. Barclay, submit this opposition to defendant's motion to compel, filed on September 15, 2016, Docket No. 53.  Because the government has provided defendant with all of the information to which defendant is entitled under the Local Rules of this Court, and case law governing pretrial discovery, the Court should deny defendant's motion to compel.  In addition, because it is clear that defendant's counsel will be a witness at trial, the government now moves to disqualify Mr. Kiley as counsel for defendant.

The extent of permissible pretrial discovery is, of course, controlled and limited by Fed.R.Crim.P. 16, the Local Rules of this Court and *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  A prosecutor is not required to make files available

to a defendant for an open-ended fishing expedition for possible Brady material. *United States v. Andrus*, 775 F.2d 825, 842-43 (7th Cir. 1985); *United States v. Davis*, 752 F.2d 963, 976 (5th Cir. 1985). Moreover, *Brady* does not require the government to disclose evidence available to the defense from other sources, evidence a defendant already possesses, or evidence the prosecutor does not possess. *United States v. Hicks*, 848 F.2d 1, 3-4 (1988); *United States v. Ramirez*, 810 F.2d 1338, 1343 (5th Cir.), *cert. denied*, 484 U.S. 844 (1987); *United v. Mabry*, 808 F.2d 671, 686-87 (10th Cir.), *cert. denied*, 484 U.S. 874 (1987).

In general, defendant's motion to compel seeks disclosure of exculpatory evidence or evidence he deems material to preparing his defense. The government has made the requisite disclosures about exculpatory evidence in its automatic discovery letter pursuant to Local Rules 116.1(C) and 116.2(B)(1) and will make the requisite disclosures under Local Rule 116.2(B)(2) and Fed.R.Crim.P. 26.2 in the time and manner provided in those rules and Local Rule 117.1(A)(4) and (5).

As for material that is necessary for defendant to prepare his defense, most circuits apply the rule in *United States v. Ross*, 511 F.2d 757, 762-763 (5th Cir. 1975): "materiality means more than that the evidence in question bears some abstract logical relationship in the case. There must be some indication

that the pretrial disclosure of the disputed evidence would have enabled the defendant to significantly alter the quantum of proof in his favor."  Defendant here has failed to establish that any of the requested materials are material to a particular defense.  For these reasons, his requests for further information should be denied.

### Request 1 and 2

More specifically, defendant requests that the government set out the manner and means by which the events surrounding Top Chef furthers the alleged Hobbs Act conspiracy in Count 1 and substantive Hobbs Act violation in Count 2.  The simple answer is that the allegations pertaining to Top Chef in the indictment are not part of the conspiracy except to the extent that they offer evidence of defendants' knowledge, intent and absence of mistake.  The government therefore objects to Request No. 1 as such information does not constitute exculpatory material or information material to a defense.

### Request 2 and 3

Defendant next argues that the indictment fails to charge an essential *mens rea* element in a Hobbs Act prosecution. The indictment contains five pages of allegations alone and, as such, more than adequately informs defendants of the charges and sets forth all of the elements of a Hobbs Act violation. Specifically, paragraph 14, alleges that BRISSETTE was warned by

two different individuals that his conduct was wrongful. Accordingly, SULLIVAN's motion should be denied.

Fed.R.Crim.P. 7(c) requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged," and "must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Considering these principles, courts have held that "an indictment is sufficient if it, first contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Cianci*, 378 F.3d 71, 81 (1st Cir. 2004) (*quoting Hamling v. United States*, 418 U.S. 87, 117 (1974)). "Although it is generally the better practice, these elements need not always be set forth in *haec verba*. Indictments "must be read to include facts which are necessarily implied by the specific allegations made." *United States v. Barbato,* 471 F.2d 918, 921 (1st Cir. 1973) (citation omitted).

Indeed, the First Circuit has noted that indictments "need not always plead required scienter elements in precise statutory terms such as "willfully" or "knowingly" so long as other words or facts contained in the indictment necessarily or fairly

import guilty knowledge." *United States v. McLennan*, 672 F.2d 239, 242 (1st Cir. 1982) (*quoting Madsen v. United States*, 165 F.2d 507, 509-510 (10th Cir. 1947)).

As the Supreme Court has said, "the Federal Rules were designed to eliminate technicalities in criminal pleadings and are to be construed to secure simplicity in procedure. While detailed allegations might well have been required under common-law pleading rules, they surely are not contemplated by Rule 7(c)(1)." *United States v. Resendez-Ponce*, 549 U.S. 102, 110 (2007) (citations omitted).

In *United States v. Jackson*, 749 F.Supp.2d 19 (N.D.N.Y. 2010), the court held that the *mens rea* element of knowingly and willingly as required for a Hobbs Act conviction under Title 18, United States Code, Section 1951 can be implied by the facts in the Indictment. Moreover, contrary to defendant's argument, scienter does not need to be pleaded beyond the statutory language of the Hobbs Act extortion because the necessary scienter is embodied in the word "wrongful." In fact, the First Circuit explained that:

> . . . we have held that in cases involving extortion based on wrongful use of economic fear, the intent component of the wrongfulness element requires the government to establish that the defendant knew that he had no legitimate claim of right to the property in question. This holding corresponds in the following manner to Sturm's specific intent claims. To the extent that our holding requires a mental state above and beyond the mental state required with respect to the actus reus of extortion, we agree that

> extortion under the Hobbs Act requires the "special mental element" version of specific intent that we have described above.9 We do not, however, express any opinion about the intent required for other elements of this offense. Nor do we express any opinion about whether extortion under the Hobbs Act requires the "evil motive" version of specific intent that we have described above.

*United States v. Sturm*, 870 F.2d 769, 777 (1st Cir. 1989).

Applying these legal principles to the indictment in this case, it is clear the allegations against the defendant are sufficient and his motion should be denied. Indeed, in the recent Report and Recommendation of Magistrate Bowler, in the case of *United States vs. John Fidler*, et. al, Crim. No. 15-10300(DPW), Docket No. 132, Magistrate Bowler declined to dismiss the indictment on similar grounds holding that nothing more was required where the indictment adequately specified the elements of the Hobbs Act, including the *mens rea*, and fairly apprised the defendants of the two charges.

Here, the indictment adequately specifies the elements of the Hobbs Act. Indeed, it goes further and in paragraph 14 alleges that BRISSETTE was given warnings by two different individuals that his conduct was wrongful. More than that is not required.

The government is cognizant of its burden of proof with respect to the cases of *United States v. Enmons*, 93 S.Ct. 1007 (1972), and *United States v. Sturm*, 870 F.2d 769 (1st Cir. 1989) and will satisfy that burden at trial. The case law simply does

not support defendant's argument that the government need plead anything more than it has or provide discovery with respect to defendant's *mens rea*. To require more from the government at this time would be prejudicial to the government's case and is not necessary for defendant to prepare his defense.

**Request 4**

Defendant seeks an order that the government be required to produce all materials by witnesses about the defendant's knowledge that his conduct was wrongful as such materials are exculpatory. Defendant argues this would include information about witnesses who testified before the grand jury and those who were summoned but did not testify.

First, the government has made the requisite disclosures about exculpatory evidence in its automatic discovery letter pursuant to Local Rules 116.1(C) and 116.2(B)(1) and will make the requisite disclosures under Local Rule 116.2(B)(2) and Fed. R. Crim. P. 26.2 in the time and manner provided in those rules and Local Rule 117.1(A)(4) and (5).

Second, the fact that a witness may have appeared at the grand jury but did not actually testify does not constitute exculpatory information. There may be many reasons the government chooses not to have a witness testify before the grand jury. Thus, these materials would not necessarily be exculpatory or favorable to defendant. If they were, they would

have been disclosed by the government.

Finally, defendant's motion to compel is nothing more than a generalized request for purportedly exculpatory and impeachment information, which is in large part unsupported by, and in part, in direct conflict with Fed.R.Crim.P. 16 and the *Brady-Agurs* doctrine.  *See United States v. Agurs*, 427 U.S. 97 (1976); *Brady v. Maryland*, 373 U.S. 83 (1963).  Under the guise of seeking what is constitutionally required, defendant is attempting to obtain pre-trial discovery of nondiscoverable information.

As noted above, pursuant to Local Rules 116.1 and 116.2, the government has already notified the defendant of all exculpatory material pursuant to *Brady v. Maryland* and its progeny, to date.  To the extent that defendant seeks information beyond that required by *Brady*, the government opposes defendant's motion and requests for information.

**Mr. Kiley and his Firm Should Be Disqualified As Counsel**

The government again moves for disqualification of defendant's counsel.  With respect to defendant's Request 3, counsel raises an issue that again highlights the question whether he can provide conflict-free representation to defendant.  As the Court may recall, the government previously moved to disqualify counsel from his representation of defendant and a witness, Joseph Rull.  Counsel chose to withdraw from

representation of Mr. Rull and agreed not to cross-examine Mr. Rull at trial.  The government pointed out that this solution might not be adequate to ensure that defendant receives conflict-free representation.  It is now apparent from defendant's brief that the solution was not fail-safe.

On pages 13-14 of defendant's brief, counsel refers to a telephone call between the government, Mr. Rull, and counsel for defendant.  During that call, the government questioned Mr. Rull about defendant's knowledge that defendant knew he had no claim of right to the jobs demanded.  Counsel believes that the answers provided by Mr. Rull during that conversation do not support the government's proof of Sullivan's *mens rea*.  The government disagrees with this assessment of the evidence, however, that is not the government's concern right now.  The government's concern is that counsel's prior representation of Mr. Rull now casts Mr. Kiley – Sullivan's counsel – as a critical witness to the content of that telephone conversation.  He will surely be a witness for either defendant or government at trial, clearly an untenable situation.

The Court should be aware that there is yet another witness represented by Mr. Kiley that the government intends to call at trial.  That witness is Joyce Linehan, who is the Chief of Policy for the City of Boston.  Mr. Kiley has not yet withdrawn from representation of Ms. Linehan.  Given these multiple

representations, Mr. Kiley cannot possibly offer conflict-free representation to defendant and needs to withdraw as counsel for defendant.  For this reason, he should be disqualified.

_____

**Conclusion**

For the foregoing reasons, defendant's motion to compel should be denied and the government's motion to disqualify granted.

>Respectfully Submitted,
>
>CARMEN M. ORTIZ
>United States Attorney
>
>By:   */s/ Laura J. Kaplan*
>Laura J. Kaplan
>Kristina E. Barclay
>Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

>*/s/ Laura J. Kaplan*
>Laura J. Kaplan
>Assistant United States Attorney

Date:  September 29, 2016