UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Crim. No. 16-10137-LTS |
| TIMOTHY SULLIVAN, and KENETH BRISSETTE, Defendants. | ) ) ) ) ) | |

**SECOND MOTION FOR BILL OF PARTICULARS**

The defendants, Timothy Sullivan (Sullivan) and Kenneth Brissette, move this Court to require the government to provide a *Bill of Particulars*, as detailed below. The information sought is material and essential to the preparation of the defense. Sullivan and Brissette's request for clarification of the Government's previous responses to Magistrate Judge Dein's Order to produce a *Bill of Particulars* is occasioned by the First Circuits decision in *United States v. Burhoe*, 871 F.3d 1 (1st Cir. 2017) and the return of a *Second Superseding Indictment* (*SSI*) that changes the charging language regarding the Hobbs Act violations. The defendants' requests are material and needed to prepare this case for further dispositive motions and to prepare for trial.

All of the requested information sought herein must be disclosed in accordance with the Due Process Clause of the Constitution, the Federal Rules of Criminal Procedure, and the Local Rules of the United States District Court for the District of Massachusetts. See U.S. Const. Amend.V; Fed. R. Cr. P. 16(a)(1)(E); Local Rules 116.1 and 116.2.

BACKGROUND

The defendants are employees of the City of Boston, charged, in substance, under the Hobbs Act (18 U.S.C. §1951) with obtaining property from Crash Line Productions, Inc. (Crash

Line) through the wrongful use of fear of economic harm. The *SSI* charges that the defendants implicitly exploited Crash Line's fear that if it did not hire members of Local 11 to work at the Boston Calling Festival on City Hall Plaza, it would not receive the necessary city permits or a long term licensing agreement to stage the festival.

The *First Superseding Indictment* (*FSI*) alleged that the defendants used their power as City of Boston Employees to extort Crash Line to obtain wages for unwanted, unnecessary, and superfluous jobs, and wages and benefits to be paid pursuant to a labor contract with Local 11.

The defendants filed a *Motion for Bill of Particulars* seeking particularization of the "property" allegedly extorted, who obtained the property, and the manner and means by which such property was extorted. The Magistrate Judge (Dein, U.S.M.J.) issued an order, allowing the motion in part and denying it in part on October 26, 2016, *Doc. No*. 65.

The defendants subsequently filed a motion to dismiss which alleged, in relevant part, the *FSI* was deficient in allegations concerning Sullivan and Brissette "obtaining" property from Crash Line. See *Doc. No*. 82-84. The defendants argued that these counts failed to allege that they obtained Crash Line's money which they then acquired, as required by *Sekhar v. United States*, ---U.S. ---, 133 S.Ct. 2720 (2013) and *Scheidler v. National Organization for Women*, 537 U.S. 393 (2003). The defendants asserted they themselves had not been paid wages and benefits from Crash Line and that the services were needed, not unwanted, unnecessary, and superfluous.

The *Motion to Dismiss* was denied on May 2, 2017. *Doc. No*. 106.

On September 8, 2017 the Frist Circuit issued its decision in *Burhoe*. The defendants submitted that the holdings in *Burhoe* vitiated the basis on which the District Court had denied the motion to dismiss and asked for reconsideration. See *Doc. Nos*. 121-124.

On November 29, 2017, the grand jury returned a *Second Superseding Indictment*. The changes made in the *SSI* were few, but significant. The defendants seek particulars to be able to defend the amended charges.

## LEGAL STANDARD

An indictment must provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P 7(c)(1). An indictment "should lay out the elements of the charge and the factual circumstances underlying them." *United States v. Elliott*, 689 F.2d 178, 180 (10th Cir. 1982); *see also Yates v. United States*, 404 F.2d 462, 464 (1st Cir. 1968) (noting that "indictment's primary goal" is "that defendant be appraised with reasonable certainty of the nature of the charge against him"). An indictment is only sufficient "if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy." *United States v. Eirby*, 262 F.3d 31, 38 (1st Cir. 2001). As the First Circuit explained:

> A vital function of an indictment is to provide such description of the particular act alleged to have been committed by the accused as will enable him properly to defend against the accusation . . . . This principle is derived directly from the Sixth Amendment's guarantee of the right of an accused to be informed of the nature and cause of the accusation . . . and is basic to the proper functioning of our adversary system of justice. Without sufficient information to identify that conduct which the grand jury has deemed adequate to support an indictment, an accused is at a material disadvantage in meeting the charge against him.

*United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970) (internal quotation marks omitted).

In addition to reciting the elements of the charge, an indictment must also "sufficiently appraise the defendant 'of what he must be prepared to meet.'" *Russell v. United States*, 369 U.S. 749, 764 (1962). The general description of the offense can include the statutory language, but "it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged."

*Hamling v. United States*, 418 U.S. 87, 117-18 (1974). Although the indictment need not allege "every factual nugget necessary for conviction," it must provide "some means of pinning down the specific conduct at issue." *United States v. Smith*, 230 F.3d 300, 306 (7th Cir. 2000). The specificity demanded of indictments protects the accused's Sixth Amendment right to be informed of the "'nature and cause'" of the accusation. *United States v. Prentiss*, 206 F.3d 960, 964 (10th Cir. 2000) (quoting *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992)). As the Supreme Court explained:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

*Russell*, 369 U.S. at 770. Finally, the indictment must enable the defendant to assert a double jeopardy defense at any subsequent proceeding. *Eirby*, 262 F.3d at 38.

## REQUEST FOR PARTICULARS

The indictment in this case does not meet these requirements. The defendants ask this Court to order the government to provide a bill of particulars specifying the following information:

a) the unnamed others who participated in the charged acts;

b) whether the *SSI* uses the word "obtain" to mean that defendants Sullivan and Brissette directly acquired possession of the "wages and employee benefits" at issue;

    c) whether *SSI* uses the term "property" to mean the money and union benefits paid to the Local 11 members or only the *delta* between the union scale and the non-union scale charged by William Kenny;[1]

    d) identify the object of the "fear" Crash Line possessed -- did Crash Line fear
        1. not getting the "permits"
        2. not getting the curfew it sought for the bands to perform;
        3. not getting the curfew to sell beer extended;
        4. not getting an extension of its existing contract with the City of Boston;[2]
        5. identify the source of the right Crash Line had to request an extension of its licensing agreement with the City of Boston;

    e) identify whether the *SSI* changes the nature of the allegations in the *FSI* that Sullivan and Brissette were acting as agents and/or assisting Local 11 in getting members of Local 11 hired by Crash Line.

---

[1] In its *Opposition to Defendants' Motion to Dismiss (Opposition)*, filed November 20, 2107, approximately 10 days before the return of the Second Superseding Indictment, the prosecutors gave two inconsistent descriptions of the "property" allegedly extorted:
[A] Moreover, the two theories the government intends to pursue are the same ones it has always advanced. One theory involves the demands for wages for additional labor and the other involves the demand for a labor agreement for union scale wages and benefits**.** Contrary to defendants' claim, there is a distinction between these two forms of property and it is a distinction with a difference.
Later in the same document, the government explained: [B] Here, unlike the wages and benefits in *Burhoe*, the individual employees and union members are not the victims of the extortion. Instead, the extorted property is the wages and employee benefits to be paid by Crash Line pursuant to its labor contract with Local 11 and reflects the additional monies, which Crash Line was required to pay as union-scale wages to the members of Local 11 above the amount of wages paid to non-union employees. Such monies are obtainable property, which are transferable from one person to another for purposes of *Sekhar*.

[2] Explaining what the *SSI* would allege, the *Opposition* stated: "This case involves wrongful action by government employees taken to *assist* a union in wrongfully obtaining property to which neither the union nor the City of Boston has a claim of right under any statute, regulation or agreement. Defendants, acting on behalf of the City of Boston, were not entitled to use Crash Line Production's ("Crash Line") fear that it would not get the permits it needed for its concert or a long term licensing agreement it needed for financing in order to obtain from Crash Line wages and benefits to which members of IATSE Local 11 ("Local 11") were not entitled." *Opposition*, p. 5. Thereafter, in the same document, the prosecutors set forth in approximately 5 pages why the defendants were not agents of the union.  See *Opposition*, pp. 9-14.  It changed its position again in the same document: "Second, because defendants were not members of a union and were not parties to a collective bargaining relationship, their conduct is outside the collective bargaining context even though they acted *to promote Local 11's interests*." *Opposition*, p. 12.

ARGUMENT

Federal Rule of Criminal Procedure 7(f) "specifically empowers the trial court to 'direct the filing of a bill of particulars'" and gives the trial court "very broad discretion in ruling upon requests for such bills." *Will v. United States*, 389 U.S. 90 (1967) (quoting Fed. R. Crim. P. 7(f)). "The purpose of a bill of particulars is to provide the accused with detail of the charges against him where necessary to enable him to prepare his defense, to avoid surprise at trial, and to protect against double jeopardy." *United States v. Paiva*, 892 F.2d 148, 154 (1st Cir. 1989); *see also United States v. Sepulveda*, 15 F.3d 1161, 1192-93 (1st Cir. 1993) (holding that motion for bill of particulars should be granted "only if the accused, in the absence of a more detailed specification, will be disabled from preparing a defense, caught by unfair surprise at trial, or hampered in seeking the shelter of the Double Jeopardy Clause").

The defendants have been seeking the details requested above since this case began, including in a prior motion for bill of particulars. *See* Doc. Nos. 52 & 53. The government's allegations are general and imprecise, and its representations about the nature of its evidence and argument have shifted constantly and dramatically. The government's recent, abrupt change in theory and return of the *Second Superseding Indictment,* after the theory on which the *First Superseding Indictment* was vitiated by the decision in *Burhoe*, highlights the need for a bill of particulars, in light of the need to focus the defendants' investigation to address and rebut this new theory.

## CONCLUSION

For the foregoing reasons, the defendants ask this Court to order the government to provide a bill of particulars.

Respectfully submitted,

KENNETH BRISSETTE
TIMOTHY SULLIVAN

By their attorneys,

| | |
|---|---|
| */s/ William H. Kettlewell* | */s/ Thomas R. Kiley* |
| William H. Kettlewell (BBO # 270320) | Thomas R. Kiley (BBO # 271460) |
| Sara E. Silva (BBO # 645293) | William J. Cintolo (BBO # 084120) |
| HOGAN LOVELLS LLP | Meredith G. Fierro (BBO # 696295) |
| 100 High Street, 20th Floor | COSGROVE EISENBERG & KILEY |
| Boston, MA 02110 | One International Place, Suite 1820 |
| (617) 371-1000 | Boston, MA 02110 |
| (617) 371-1037 (fax) | 617.439.7775 (tel) |
| bill.kettlewell@hoganlovells.com | 617.330.8774 (fax) |
| sara.silva@hoganlovells.com | wcintolo@ceklaw.net |

**CERTIFICATE OF SERVICE**

I, William J. Cintolo, certify that on December 18, 2017, I caused a copy of the Defendants' *Second Motion for Bill of Particulars* to be served on Laura J. Kaplan, Assistant U.S. Attorney and Kristina E. Barkley, Assistant U.S. Attorney by filing this document through the ECF system which will then be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date: December 18, 2017        /s/ *William J. Cintolo*
                               William J. Cintolo