UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Crim. No. 16-10137-LTS |
| | ) | |
| KENNETH BRISSETTE and | ) | |
| TIMOTHY SULLIVAN, | ) | |
| | ) | |
| Defendants | ) | |

## GOVERNMENT'S EMERGENCY MOTION FOR RECONSIDERATION

The United States of America, by Andrew E. Lelling, United States Attorney, and Laura J. Kaplan and Kristina E. Barclay, Assistant United States Attorneys, for the District of Massachusetts, submits this Emergency Motion for Reconsideration of the Court's Order on Defendants' Renewed Motion to Dismiss and Other Pending Motions (Docket #192)(the Order). The government requests that the Court reconsider its Order with respect to the instructions it states that it will give the jury as to the "obtaining property from another" element of the Hobbs Act and that the Order also states will provide the legal standard against which the Court will evaluate the sufficiency of the government's evidence. The government submits that the instructions as proposed by the Court in its Order are based on an incorrect reading of the law and, unless corrected, will preclude the government from proving its case beyond a reasonable doubt.

Because the trial is presently scheduled to commence on March 26, 2018, the government seeks expedited review of its motion for reconsideration, and the defendants have assented to an expedited briefing and argument schedule. The defendants will respond to this emergency motion on or before March 9, 2018, and the parties request oral argument on this emergency

1

motion during the week of March 12, 2018.

## ARGUMENT

In its Order (page 7), the Court states that it intends to instruct the jury with respect to the "obtaining property of another" element in the following manner:

> To prove this element, the government must prove beyond a reasonable doubt that Crash Line was deprived of its property, and that the defendants acquired that property. A defendant "obtains" property for these purposes when he either: 1) takes physical possession of some or all of the property; 2) personally acquires the power to exercise, transfer, or sell the property; or 3) directs the victim to transfer the property to an identified third party and personally benefits from the transfer of the property. It is not enough for the government to prove that the defendants controlled the property by directing its transfer to a third party, nor is merely depriving another of property sufficient to show that the defendants "obtained" that property.
>
> Under the third theory of "obtaining," you must determine, based on all of the evidence before you, whether the defendants personally benefitted from the transfer of the property. Instances in which a defendant personally benefits from the transfer of property could include: when the defendant or an organization of which he is a member receives a thing of value other than the property as a result of the transfer; when the defendant directs the property to a family member or to an organization of which the defendant is a member; and/or when the defendant directs the property to a person or entity to whom the defendant owes a debt, intending that the transfer of property will satisfy that debt. A defendant does not personally benefit from the transfer of property when he merely hopes to receive some future benefit, or when he receives a speculative, unidentifiable, or purely psychological benefit from it.

The Court also states that this instruction establishes "the legal standard against which the Court will evaluate the evidence on any motion for judgment of acquittal filed by the defendants at the close of the government's case-in-chief or after a verdict." Order, pp.7-8.

The government submits that the Court's requirement that a defendant receive a personal benefit to commit Hobbs Act extortion is an incorrect statement of the law and is not supported by the cases the Court cites. The parties have argued their positions on this issue, both orally and in writing, and the government will not reiterate all of those arguments here. Briefly stated,

however, the Court's requirement of a personal benefit to the extortionist is directly contrary to *United States v. Green*, which held expressly that Hobbs Act extortion "in no way depends upon having a direct benefit conferred upon the person who obtains the property," 350 U.S. 415, 420 (1956). The Court's "personal benefit" requirement is also at odds with the decisions of every other court of appeals to address the issue, all of which have stated that Hobbs Act extortion does not depend on the extortionist himself or herself actually receiving the extorted property, but may be shown if the extortionist directs the property to another. *See United States v. Gotti*, 459 F.3d 296, 324 & n.9 (2d Cir. 2006); *United States v. Cerilli*, 603 F.2d 415, 420 (3d Cir. 1979); *United States v. Santoni*, 585 F.2d 667, 673 (4th Cir. 1978); *United States v. Hyde*, 448 F.2d 815, 843 (5th Cir. 1971); *United States v. Lewis*, 797 F.2d 358, 364 (7th Cir. 1986); *United States v. Frazier*, 560 F.2d 884, 887 (8th Cir. 1977);[1] *United States v. Renzi*, 769 F.3d 731, 743 (9th Cir. 2014); *United States v. Vigil*, 523 F.3d 1258, 1264 (10th Cir. 2008); *United States v. Haimowitz,* 725 F.2d 1561, 1577 (11th Cir. 1984).

None of the cases the Court cites require a different result. Neither *Sekhar v. United States,* 133 S. Ct. 2720 (2013), nor *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003), imposed a requirement that a Hobbs Act defendant personally benefit from an extortion.

---

[1]In *United States v. McDonough*, the First Circuit cited the Eighth Circuit's post-*Frazier* decision in *United States v. Evans*, 30 F.3d 1015 (8th Cir. 1994), as adopting a different view, *see* 727 F.3d 143, 161 (1st Cir. 2013) (citing *Evans* for the proposition that "at least indirect" benefits to the extortionist may be required). The government does not agree with *McDonough*'s reading of *Evans*, but at most this suggests that the Eighth Circuit's position is unclear. Moreover, *McDonough*'s reliance on *Evans* as demonstrating that the Eighth Circuit requires a benefit to the extortionist is undermined by *United States v. Carlson*, in which the same court, addressing a conviction under the extortionate communications statute, 18 U.S.C. § 876, held that extortion is shown where the extorted property is delivered to a third party with no evidence that the defendant benefitted from it. *See* 787 F.3d 939, 944 (8th Cir. 2015).

Rather, both cases addressed the type of property that is susceptible to Hobbs Act extortion, holding that the Act only reaches deprivations of property that is "obtainable," meaning that it is "something of value . . . that can be exercised, transferred, or sold." *Sekhar*, 133 S. Ct. at 2726; *accord Scheidler*, 537 U.S. at 405 (similar). That this analysis did not alter *Green*'s holding that the extortionist need not personally benefit is readily apparent from *Scheidler*, which expressly recited and declined to disturb *Green*'s holding that no "direct benefit" to the extortionist must be shown. *See* 538 U.S. at 402; *see also United States v. Baker*, 2017 WL 4853811, at *4 (W.D. Tex. October 26, 2017) ("At no point in *Sekhar* did the Court examine the issue of whether there needed to be proof the defendant sought to personally acquire property from a victim."). Consistent with this view, appellate courts that have addressed the issue post-*Scheidler* and *Sekhar* have continued to follow the rule that Hobbs Act extortion exists where the benefits of the extortion are directed to third parties, although not all of them have addressed the issue expressly. *See Renzi*, 769 F.3d at 743; *Vigil*, 523 F.3d at 1264; *Gotti*, 459 F.3d at 324 & n.9; *cf. Carlson,* 787 F.3d at 944 (following reasoning of *Gotti* in extortionate communications prosecution).

The First Circuit's decision in *United States v. Burhoe,* 871 F.3d 1 (1st Cir. 2017), also does not support this Court's instruction. To begin with, while *Burhoe* discussed whether the government had shown that the defendants "obtained" the wages and benefits from the union members victimized by the defendants' extortionate activities, the First Circuit ultimately reversed these convictions on a different ground—a failure by the government to show that the wages and benefits were obtained from the defendants with the victims' consent. 871 F.3d at 26-31. Thus, the First Circuit's statements as to what is needed to show that property is "obtained" were dicta and are not binding.

In any event, the language in *Burhoe* does not support this Court's instruction. While *Burhoe* refers to a "requirement that the defendants 'obtain' the property," and notes that this requirement was met in *Gotti* by proof that the defendants "directly benefited" from the deprivation of the victims' property, *see* 871 F.3d at 27, *Burhoe* does not purport to hold that a "direct benefit" is required in all cases for property to be "obtained." Indeed, *Burhoe* makes clear that it is not. Discussing the extortion count involving Thomas Flaherty, the First Circuit held that the government had introduced sufficient evidence that Flaherty's wages and benefits were obtained by the defendants "in the sense that [the defendants] could 'exercise, transfer, or sell'" them, because it provided evidence "that family members [of the defendants] worked hours at Champion . . . when Flaherty was out of work, and not at any other time." *Id.* In reaching this conclusion, *Burhoe* did not suggest that Perry or Burhoe had received a "personal benefit." Rather, *Burhoe* found that the direction of Flaherty's work to others satisfied the "obtaining" prong because it represented a cognizable "transfer" of property under *Scheidler* and *Sekhar*. 871 F.3d at 27. Here, as in the extortion count involving Flaherty, the government alleges that the defendants used threats to wrongfully deprive the victim company of money to pay wages and benefits and to direct that money to identified others—the union workers. If shown, this evidence is sufficient to establish a "transfer" under *Burhoe* without any need to identify a personal benefit to the defendants.

Although this Court does not explain in its opinion why it concluded that a "personal benefit" is required to show that property is "obtained," the language of the Court's instructions suggests that it may have conflated *Burhoe*'s discussion of *Gotti* with *Burhoe*'s discussion of the Flaherty charge. That is, the Court read *Burhoe* as holding that a transfer of property to family members or fellow union members satisfies the "obtaining" requirement *because* such a transfer

5

provides a personal benefit. That is not what *Burhoe* says, however. As set forth above, *Burhoe* made clear that the direction of work to Flaherty satisfied the "obtaining" prong because it was a "transfer" of property under *Scheidler* and *Sekhar*, not because it provided a personal benefit to the defendants. Thus, *Burhoe* provides no authority for the Court's conclusion that a personal benefit is required in all cases to establish extortion.[2]

Similarly, *Burhoe* provides no support for the Court's attempt to cabin the types of benefits that would qualify, including by stating that transfers to some individuals (family members, fellow members of an organization) would qualify, while others may not. Nothing in *Burhoe* purports to define these categories as the exclusive means of showing that property is "obtained." Nor would such line-drawing make sense. The government can think of no policy rationale that would support a rule that makes it a Hobbs Act violation to use threats to deprive victims of property for the benefit of family members, but exempts from Hobbs Act liability deprivations for the benefit of friends or acquaintances.[3] In the government's view, wrongfully directing property without a claim of right to a favored constituent is indeed extortion, even if the constituent is not a family member or a close friend, and the jury should not be instructed so as to preclude this.

Finally, the Court cites *Honeycutt v. United States*, 137 S.Ct. 1626, 1632–33 (2017) in

---

[2]Nor is the Court's position supported by the Second Circuit's decision in *Gotti*. While *Gotti* held that an extortion of union members' rights could support a Hobbs Act extortion where the extortionist effectively sought to exercise those rights to its own benefit, *see* 459 F.3d at 326, the opinion made clear that a transfer of cognizable property rights to a third party would also qualify. *See id.* at n.9.

[3]The Court's treatment of transfers of property to particular groups, such as family members, as inherently providing a personal benefit to the extortionist is also difficult to square with the Court's rejection in the final line of its instruction of intangible benefits, such as psychological benefits, as sufficient to establish that property was "obtained."

6

support of its view that defendants must personally obtain the property or a benefit therefrom under the Hobbs Act. But the Supreme Court in *Honeycutt* only considered the meaning of "obtain" as that term is used in the drug forfeiture statute, 21 U.S.C. § 853(a)(1), and specifically "whether, under § 853, a defendant may be held jointly and severally liable for property that his co-conspirator derived from the crime but that the defendant himself did not acquire." 137 S. Ct. at 1630. Whereas the Hobbs Act is silent as to whether a defendant must personally obtain a benefit from extorted property, Section 853(a)(1) specifically requires the forfeiture only of "property constituting, or derived from, any proceeds *the person obtained, directly or indirectly*, as the result of" certain drug crimes. 21 U.S.C. § 853(a)(1)(emphasis added). The Court's holding that joint and several liability of a defendant for property obtained by a co-conspirator was "inconsistent with [Section 853(a)(1)'s] text and structure" is therefore limited to the "text and structure" of Section 853(a)(1) and not applicable to the Hobbs Act. Whereas Section 853(a) specifically requires the defendant himself or herself to "directly or indirectly" obtain the property at issue, the Hobbs Act contains no such limitation and therefore *Honeycutt* is simply inapplicable. *See Baker*, 2017 WL 4853811, at *4 (finding *Honeycutt* irrelevant to determine the meaning of "obtaining" under the wire fraud statute). Indeed, the Court in *Honeycutt* did not reference – let alone reject the holding of – *Green* or its progeny.

For all the foregoing reasons, the Court should reconsider its instruction requiring proof of a personal benefit to the defendants.

Should the Court decline to reconsider its order, the government will be on a "collision course" with dismissal, because the evidence the government intends to introduce at trial will be

insufficient under the Court's view of the relevant law.[4]  *See United States v. Horwitz*, 622 F.2d 1101, 1105 (1st Cir. 1980) (holding that, where district court said it would exclude testimony if government did not grant immunity, government refused to grant immunity, and defense counsel could be counted on to make an unappealable midtrial motion to exclude testimony, government and court were on "collision course" that would almost certainly result in suppression of testimony, and district court's pretrial order is appealable); *United States v. Kane*, 646 F.2d 4, 8 (1st Cir. 1981) (holding that, where district court states that it will—or almost certainly will—exclude evidence if government fails to comply with discovery order, and government says it will not comply with order, government and court are on collision course which is almost certain to result in exclusion and court's order is appealable).  In the event the Court denies this Motion, for the Court's planning purposes, the government intends to seek permission from the Solicitor General to appeal the denial.

Given that trial is scheduled to start in three weeks, the parties request an expedited briefing schedule, oral argument, and ruling on this Motion for Reconsideration.  The defendants have agreed to file responses to this Motion on or before March 9, 2018, and the

---

[4]Because the government is not required to prove a benefit to the defendants under the Hobbs Act, it had agreed to limit the evidence it will seek to admit regarding the events surrounding Top Chef, and the Court denied the defendants' motion *in limine* to exclude the Top Chef evidence based, in part, on the government's representations regarding the scope of its anticipated Top Chef evidence.  Order, p.9.  The government hereby reserves the right to seek admission of additional Top Chef evidence, in light of rulings by this Court or the First Circuit Court of Appeals regarding the "obtains property from another" element of the Hobbs Act.

8

parties request oral argument on this Motion during the week of March 12, 2018.

                              Respectfully submitted,

                              ANDREW E. LELLING
                              United States Attorney

By:    */s/Kristina E. Barclay*
        Laura J. Kaplan
        Kristina E. Barclay
        Assistant U.S. Attorneys
        (617) 748-3100

## CERTIFICATE OF SERVICE

    I, Kristina E. Barclay, Assistant U.S. Attorney, certify that on March 6, 2018, I caused a copy of the government's motion to be served on counsel for all parties by electronic notice.

                              */s/Kristina E. Barclay*
                              Kristina E. Barclay
                              Assistant U.S. Attorney