UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
| v. | ) Case No. 16-cr-10137-LTS |
|  | ) |
| KENNETH BRISSETTE and | ) |
| TIMOTHY SULLIVAN | ) |
|  | ) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE USE OF THE TERM "CITY HALL" TO REFER GENERALLY TO DEFENDANTS, CITY EMPLOYEES OR CITY DEPARTMENTS**

The government has argued repeatedly that defendants Ken Brissette and Timothy Sullivan (collectively, "the Defendants") "threatened" Crash Line's ability to receive the permits it needed to operate the September 2014 Boston Calling concert on City Hall Plaza in order to induce Crash Line's consent to hire union workers. But the evidence at trial will show that neither defendant had any regulatory authority over the permits that Crash Line needed to operate the concert. The evidence will also show that neither Defendant communicated with any of the individuals who did have regulatory authority over those permits. The evidence will also show that the Defendants never even discussed Crash Line's permits with Crash Line's principals.

In this context, general references to "City Hall" that could be interpreted as encompassing the Defendants, who did not have authority and did not attempt to influence the issuance of Crash Line's permits, and other employees of City Hall who did have such authority run the risk of misleading the jury and creating a false impression that is known not to be true. For these reasons and as more fully set forth below, the Court should preclude the use of the term

1

"City Hall" and instead require the parties and witnesses to specify by name the individual(s) who took or refrained from taking the specific action at issue.

## RELEVANT BACKGROUND

The evidence at trial will show that neither defendant had any regulatory authority over the permits that Crash Line needed to operate the September 2014 Boston Calling concert. Patricia Malone, the City attorney whose responsibility it was to review all necessary permits and issue the final entertainment license that Crash Line received, repeatedly informed the government of that fact. *See* Exhibit A (Malone 4/12/16 GJ Tr.) at 12-13 (explaining the permitting process and that once an applicant has every permit it needs, the applicant would then need to come to her office with the complete package so that she could issue the final Entertainment License); *id.* at 26-28 (walking government through permits needed for Crash Line's September 2014 concert and identifying the responsible City department for issuing them); Exhibit B (Malone 4/7/16 Report) at 2-3 (specifically informing government that Mr. Brissette "has no regulatory authority over permits").[1]

The evidence will also show that the individuals who did have regulatory authority for issuing Crash Line's permits had no communications with either defendant concerning those permits or the use of union labor. Ms. Malone testified unequivocally that she had no interactions with either defendant in connection with the issuance of Crash Line's Entertainment License or the use of union labor. *See* Exhibit A (Malone 4/12/16 GJ Tr.) at 28-30, 32; Exhibit B (Malone 4/7/16 Report) at 3. Then-Boston Police Commissioner Evans told the government the same thing. *See* Exhibit C (Evans 2/1/17 Report) at 3; *see also* Exhibit A (Malone 4/12/16 GJ

---

[1] The Exhibits referenced in this Memorandum are the subject of a pending motion for leave to file under seal.

Tr.) at 50 (explaining that the Boston Police Department has sign-off authority over alcohol and entertainment-related licenses and permits).

And the evidence will show that Crash Line's representatives were well aware of who was responsible for issuing Crash Line's permits – and knew that it was not Mr. Brissette or Mr. Sullivan. *See* Exhibit D (Appel 1/5/16 GJ Tr.) at 15-17 (explaining permitting process and confirming that once Crash Line received all of its permits from the various departments, it would bring them to Ms. Malone so that she could issue the final Entertainment License); Exhibit E (Appel 1/5/16 Report) at 2, ¶ 6 ("Patricia Malone of the licensing/permitting department has the final signature needed on the entertainment license for Crash Line to produce the show on City Hall plaza.  All the other approvals from the other departments go to Malone and she gives final approval."). Indeed, the evidence is expected to be that neither Mr. Brissette nor Mr. Sullivan had any discussions with Crash Line about its permits prior to the September 2014 concert. *See* Exhibit E (Appel 1/5/16 Report) at 4, ¶ 18 ("There was no mention of permitting from Brissette or Sullivan at the meeting before the September show.").

In interviews and other proceedings leading up to the indictment in this case, however, the government has at times allowed witnesses to blur the otherwise clear lines of permitting authority by eliciting statements that Crash Line "grouped City Hall departments together as one entity," despite the fact that its representatives clearly knew who had regulatory authority for issuing Crash Line's permits. *Compare* Exhibit D (Appel 1/5/16 GJ Tr.) at 15-17 & Exhibit E (Appel 1/5/16 Report) at 2, ¶ 6 ("Patricia Malone of the licensing/permitting department has the final signature needed on the entertainment license for Crash Line to produce the show on City Hall plaza.") *with* Exhibit F (Appel 4/11/16 Report) at 3, ¶ 11 ("Appel always grouped City Hall

3

departments together as one entity.  He did not view it as Brissette and Special Events, or Malone at Licensing and Consumer Affairs, but all together.").

## ARGUMENT

Introducing false or inaccurate testimony at a criminal trial violates the constitutional right to due process.  *See Giglio v. U.S.*, 405 U.S. 150, 153 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  Testimony is considered false or inaccurate for constitutional purposes if it is factually inaccurate or "creates a false impression of facts which are known not to be true."  *See, e.g., Hamric v. Bailey*, 386 F.2d 390, 394 (4th Cir. 1967); *United States v. Gentry*, 2011 WL 13172167, *4 (D. S.C. March 10, 2011).  The government must avoid introducing inaccurate testimony whether by eliciting the testimony directly or merely allowing such testimony to stand uncorrected.  *United States v. Kelly*, 543 F. Supp. 1303, 1309-11 (D. Mass. 1982) (listing professional standards establishing government's obligations to avoid introducing or allowing false evidence at trial).  And, of course, even evidence that does not rise to the level of "false" testimony should be excluded if the risk of misleading the jury substantially outweighs its probative value.  *See* Fed. R. Evid. 403.

Here, the government appears poised to rest its case entirely on the subjective and unexpressed state of mind of Crash Line's representative.  *See* dkt # 184 (Govt's Trial Brief) at 5-6.  The government has conceded that neither defendant "overtly" threatened Crash Line's ability to receive its permits at any time prior to the September 2014 concert.  *See* dkt # 217 at 2. The government also does not have any objective evidence that the Defendants "covertly" threatened Crash Line's permits, for example by taking any steps to hinder the issuance of those permits.  While Crash Line's representative may well have characterized Mr. Brissette, Mr. Sullivan, Ms. Malone and any number of other city employees generally as "City Hall," it is

clear from both his contemporaneous writings and his later statements to the government that he understood precisely who had authority over Crash Line's permits – and that it was not the Defendants.  *See, e.g.,* Exhibit D (Appel GJ Tr.) at 15-17; Exhibit E (Appel 1/5/16 interview) at 2, ¶ 6.  And to the extent that Crash Line faced any issues with the permits for the September 2014 concert, it is equally clear from his contemporaneous writings and later statements to the government that he knew those issues were coming from the individuals and departments that had regulatory authority over his permits – and not the Defendants – and that they involved public safety concerns over the risk of underage intoxication at the concert, and not the use of union labor.  *See, e.g.,* Exhibit C (Evans 2/1/17 Report) at 1-3; Exhibit E (Appel 1/5/16 Report) at 3, ¶ 13.

Against this backdrop, allowing Crash Line's representatives to testify that they "always grouped City Hall departments into one entity" or use the term "City Hall" to refer generally to the Defendants and/or others runs a significant risk of creating a false impression that the Defendants did in fact have some regulatory authority over Crash Line's permits when that is simply not true.[2]  At the very least, it would create an unacceptable risk of confusing and misleading the jury about facts that are not legitimately in dispute.

For these reasons, whether viewed through the lens of Fed. R. Evid. 403 or the Due Process Clause, the Court should preclude the use of the term "City Hall" to refer generally to the Defendants and/or other specific individuals or Departments, and instead require the parties and witnesses to specify which individual within the City of Boston took or refrained from taking the specific action at issue.

---

[2] For the same reasons, the government should be precluded from referring to "City Hall" generally when describing the permitting process and/or the entities or individuals responsible for issuing the permits necessary for the September 2014 concert.

Respectfully submitted,

| | |
|---|---|
| KENNETH BRISSETTE,<br>By his attorneys, | TIMOTHY SULLIVAN<br>By his attorneys, |
| */s/ William H. Kettlewell*<br>*/s/ Sara E. Silva*<br>*/s/ Courtney Caruso*<br>William H. Kettlewell (BBO #270320)<br>Sara E. Silva (BBO #645293)<br>Courtney A. Caruso (BBO #687642)<br>HOGAN LOVELLS US LLP<br>100 High Street, 20th Floor<br>Boston, MA 02110<br>(617) 371-1000<br>(617) 371-1037 (fax)<br>bill.kettlewell@hoganlovells.com<br>sara.silva@hoganlovells.com<br>courtney.caruso@hoganlovells.com | */s/ William J. Cintolo*<br>*/s/ Thomas R. Kiley*<br>*/s/ Meredith Fierro*<br>William J. Cintolo (BBO #084120)<br>Thomas R. Kiley (BBO #271460)<br>Meredith Fierro (BBO#696295)<br>COSGROVE EISENBERG & KILEY<br>One International Place, Suite 1820<br>Boston, MA 02110<br>(617) 439-7775<br>(617) 330-8774 (fax)<br>wcintolo@ceklaw.net<br>tkiley@ceklaw.net<br>mfierro@ceklaw.net |

Dated: May 17, 2019