1   UNITED STATES DISTRICT COURT
    DISTRICT OF MASSACHUSETTS
2

3   - - - - - - - - - - - - - - - - - - - x

4   UNITED STATES OF AMERICA,                :

5           Plaintiff,                       :   Criminal Action No.
                                                 1:16-cr-10137-LTS-1
6       v.                                   :   1:16-cr-10137-LTS-2

7   KENNETH BRISSETTE, et al.,               :

8           Defendants.                      :

9   - - - - - - - - - - - - - - - - - - - x

10

11      BEFORE THE HONORABLE LEO T. SOROKIN, DISTRICT JUDGE

12

13                      **JURY TRIAL**
                          **DAY 1**
14                  **PARTIAL TRANSCRIPT**
                         **SEALED**

15

16

17              Monday, July 22, 2019
                       9:01 a.m.

18

19

20         John J. Moakley United States Courthouse
                   Courtroom No. 13
21                 One Courthouse Way
                   Boston, Massachusetts

22

23              Rachel M. Lopez, CRR
                Official Court Reporter
24          One Courthouse Way, Suite 5209
              Boston, Massachusetts  02210
25                 raeufp@gmail.com

1                  **A P P E A R A N C E S**

2

   On behalf of the Plaintiff:

3
        UNITED STATES ATTORNEY'S OFFICE - MASSACHUSETTS
4       BY:  LAURA KAPLAN AND KRISTINA E. BARCLAY
        John Joseph Moakley Courthouse
5       One Courthouse Way, Suite 9200
        Boston, Massachusetts  02210
6       (617) 748-3124
        laura.kaplan@usdoj.gov
7       kristina.barclay@usdoj.gov

8

9  On behalf of Defendant Brissette:

10       HOGAN LOVELLS US, LLP
         BY:  WILLIAM H. KETTLEWELL AND SARA E. SILVA
11       100 High Street
         20th Floor
12       Boston, Massachusetts  02110
         (617) 371-1037
13       bill.kettlewell@hoganlovells.com
         sara.silva@hoganlovells.com
14

15
   On behalf of Defendant Sullivan:
16
         COSGROVE, EISENBERG & KILEY, PC
17       BY:  THOMAS R. KILEY AND WILLIAM J. CINTOLO
         One International Place
18       Suite 1820
         Boston, Massachusetts  02110
19       (617) 439-7775
         tkiley@ceklaw.net
20       wcintolo@ceklaw.net

21

22

23

24

25

1                    **P R O C E E D I N G S**

2         (In open court, beginning of requested portion.)

3         THE DEPUTY CLERK:  The United States District Court

4 for the District of Massachusetts is now in session, the

5 Honorable Leo T. Sorokin presiding.

6         Today is June 22nd, the case of United States vs.

7 Kenneth Brissette, criminal action 16-10137 will now appear

8 before this court.  Counsel, please identify themselves for

9 the record.

10         MS. BARCLAY:  Good morning, Your Honor, Kristina

11 Barclay for the United States.

12         MS. KAPLAN:  Good morning, Your Honor, Laura Kaplan

13 for the Government.

14         THE COURT:  Good morning.

15         MR. KETTLEWELL:  Good morning, Your Honor, William

16 Kettlewell and Sara Silva for Mr. Brissette, who's present.

17         MS. SILVA:  Good morning, Your Honor.

18         MR. KILEY:  Thomas Kiley, Your Honor, for

19 Mr. Sullivan, who's present, and I'm accompanied by

20 Mr. Cintolo, who will introduce himself, I'm sure.

21         MR. CINTOLO:  Do I have to?  Okay.  My name is

22 William Cintolo, C-i-n-t-o-l-o, and I appear on behalf of

23 Mr. Sullivan.

24         THE COURT:  All right.  A couple of things.  I

25 know -- oh, you guys were worried about the podium, anyway,

so we're going to do the sidebars with the individual jurors
on this side, because that's easier for Ms. Lopez, so the
jurors either can come up this way, and if they are coming up
that way, because they're sitting on my left, they will be
able to walk up and come around, I think.

One thing, tiny change to what I told you the other
day about how I'm going to do it.  This doesn't change the
exercise of strikes or any of that, but just in asking the
questions.  This is something I've been thinking about for a
while and I've talked to Jim McAlear about it, and I think it
makes sense to --

So when I ask the questions of the jurors who are
in the venire, so for example, question one is do you know
any of the court staff that I've introduced; Ms. Simeone,
myself, or Ms. Lopez.  Rather than having them raise their
hand and write everyone's number down, which I've always
found to be a very cumbersome process, all of the jurors are
going to have pads and pens and I'll tell them this is
question one, if your answer is yes to question one, just
write down a one.

And then I'll ask them question two and I'll tell
them to write down the number two, if they answered yes to
that question.  And then when they come up and then what I
will do is go through each -- when we're done asking the
questions, starting with juror number one, I'll say juror

1    number one, did you write down any questions, or is there

2    anything else you wish to speak to me about.  And if so, come

3    forward and they'll bring their card and then we'll have the

4    list of questions to which they've answered.  And they do it

5    that -- some other judges, I don't know about in this

6    building, do it that way, but I know other judges who do it

7    that way and they find it simpler and more efficient and so

8    that's what I'm going to do.  But other than that, the rest

9    of the process is exactly as I described to you the other

10   day.

11             Yes.

12             MS. KAPLAN:  Your Honor, can I just confirm that

13   the Government has six peremptory challenges and two for the

14   alternates?

15             THE COURT:  Yes.  So what -- so the Government has

16   six plus two.  You get one for each one or two alternates, so

17   we're doing three alternates, so you get two, so that gives

18   you a total of eight.  The defense has ten, plus two more is

19   12.  And then you both agreed on the record that what you

20   wanted to do was just pick 15.  And so your eight and their

21   12, you can use them any which way you want on the 15 jurors

22   that we seat.  And that will be -- the jury and the

23   alternates will be the three people in seats -- well, the

24   jury will be seats one to six and then the six seats behind

25   them.

```
1              MS. KAPLAN:  And one will be --
2              MR. KETTLEWELL:  Which one is one, Your Honor?
3              THE COURT:  Yeah, so I have to think for a minute,
4    because this is not my courtroom and it's reversed.  So one,
5    ordinarily, would be the first row closest seat to me.  Okay?
6    And I think what I'm going to do, actually, is move that
7    chair --
8              Maria, if you can move that chair to the first row.
9              THE DEPUTY CLERK:  No, I can't move those chairs.
10             THE COURT:  I think that one moves.
11             THE DEPUTY CLERK:  No, they don't.
12             THE COURT:  All right.  So we'll move a chair
13   there, we'll take one of those chairs and we'll -- or the
14   black seat you can move there for now.  That'll be easier.
15             THE DEPUTY CLERK:  I'll just get a chair.
16             THE COURT:  So there will be -- so the 12 jurors
17   will be the 12 people closest to me, six in the first row,
18   six in the second row.
19             MR. KILEY:  We're going to be here for the whole
20   trial?
21             THE COURT:  No.  Just for today.  Just for today.
22   All right?  So we'll be here -- I'll come back to that,
23   Ms. Kaplan.  Just for today.  We'll pick the jury today in
24   this courtroom.  The only reason we're using this courtroom
25   is it seats more people in the audience.  And given the
```

1    number, we're bringing in an 80-person venire.  And then

2    there isn't enough room in that courtroom, my courtroom, for

3    80 people in the audience, let alone for people for the

4    families, anyone from the Government, the public, any media

5    that wants to be here.  So today here.  After today, all

6    other things will be in my courtroom.

7            You had a question.

8            MS. KAPLAN:  Just where the alternates will be.  We

9    understand one through six and then seven through 12.

10           THE COURT:  So in this courtroom, there will be one

11   alternate in the first row, because there's only seven seats,

12   and then the other two alternates will be in the second row.

13   So the first six seats in the first row, starting with the

14   one closest to me, are jurors, and the first six seats in the

15   second row, starting with the person closest to me.  And

16   because of the way the seats are, there will be two in the

17   second row, at the end, rather than one.

18           A couple little things.  One is, Mr. Kelley is not

19   here.  Shouldn't I be asking the jurors about him?

20           MR. KILEY:  Yes.  And I added another name on the

21   list, another lawyer.  I e-mailed it yesterday.  I don't know

22   if anybody saw it, but Anthony Traini and I think you should

23   name him.  He would fill the same kind of role.

24           THE COURT:  So --

25           MR. KILEY:  And only one of them would examine

```
 1   either of the witnesses, any of the witnesses whom I
 2   previously represented.
 3            THE COURT:  So Mr. Kelley works at Acucity?
 4            MR. KILEY:  He's an attorney.  He has a business,
 5   as well, but his --
 6            THE COURT:  So like when I introduce you, I say
 7   Mr. Kiley of -- and have you had any dealings with that law
 8   firm; Cosgrove, Eisenberg, & Kiley, or have you been employed
 9   by --
10            MR. KILEY:  He's a sole practitioner.
11            THE COURT:  Okay.
12            MR. KILEY:  And Mr. Traini is an attorney out of
13   Providence and he is a sole practitioner, as well.
14            THE COURT:  Mr. Kelley is a sole practitioner in
15   Boston?
16            MR. KILEY:  Yes.
17            THE COURT:  And Mr. Traini.
18            MR. KILEY:  Anthony M. Traini.  T-r-a-i-n-i.
19            THE COURT:  He's a solo practitioner?
20            MR. KILEY:  He is.
21            THE COURT:  In Providence?
22            MR. KILEY:  In Providence.
23            THE COURT:  And they also represent Mr. Sullivan?
24            MR. KILEY:  They would represent Mr. Sullivan on
25   that --
```

1          THE COURT:  Right.  I'm not going to explain that

2     level of detail.

3          MR. KILEY:  Understood.

4          THE COURT:  Then as to the entities listed on the

5     Government's list, which is 28 to 32, I'm -- some I'm just

6     eliminating, because there's specific questions about them.

7     I see why you -- in light of what I said, you put them in.

8     But like Boston Calling, IATSE -- is that how you say it?

9          MS. BARCLAY:  Yes.

10         THE COURT:  Okay.  And *Top Chef* I have specific

11    questions about and I think that covers it.  I added a

12    question about Teamsters Local 25.  I'm not going to ask

13    about Bravo or NBC.  The question about Teamsters Local 25 is

14    just have you, a family member, or a close friend been a

15    member or ever worked for them.  Bravo and NBC, I don't know

16    what -- I feel like if somebody -- I feel like the questions

17    about the Local 25 and the question about *Top Chef* are

18    sufficient for that.  I'm not asking them and I know you

19    don't want me to, like do you know of NBC.  So I think that

20    covers that.

21         The entities listed on the defense list that you

22    filed, Orkila, I think I asked about, in the course of asking

23    about Boston Calling.  But the others, I'm not quite sure who

24    they are, if I should be asking about them or not.

25         MR. KILEY:  Well, we think you should ask certainly

1    about the task force.

2              THE COURT:  What is that?

3              MR. KILEY:  The sequence of events, with respect to

4    the interactions between the defendant -- at least my client

5    and the Boston Calling folk start in March, and there is a

6    meeting in the mayor's office and there is an issue with

7    respect to work force and it is resolved.  It is resolved.

8    The issue involves the governor's task force, the -- his

9    dealing with the underground economy.  It is resolved by the

10   individuals who are working for Boston Calling and the

11   attorney general's office and the names that you also have on

12   our list include Carole Brennan and Jed Nosal and those are

13   individuals --

14             THE COURT:  Maybe they're on the Government's list.

15   They're not on your list.

16             MR. KILEY:  I think Jed Nosal was on our list, was

17   he not?

18             MS. SILVA:  I thought so.

19             MR. KILEY:  I thought we included him, Your Honor.

20             THE COURT:  What's the name?

21             MR. KILEY:  It's Attorney Nosal, Jed Nosal,

22   N-o-s-a-l.

23             THE COURT:  What I'm looking at has 14 names and --

24   from you.  I don't know -- I know yours are just the

25   supplement.  I'm not going to distinguish between the

1    Government names and the defendant names.  I'm just going to

2    list names, but I don't see -- I can add it, if you want.

3              MR. KILEY:  Yes, please do.  And again --

4              THE COURT:  What is the name?

5              MR. KILEY:  It's -- I only know him as Jed and I

6    believe that to be his true name, Nosal, N-o-s-a-l.

7              THE COURT:  Attorney Jed Nosal.

8              MR. KILEY:  And the other person who was involved

9    was --

10             THE COURT:  Boston?

11             MR. KILEY:  Yes.

12             THE COURT:  But I still don't know what the joint

13   task force on the underground economy is.

14             MR. KILEY:  It was a creation by the governor.  It

15   sits at Ashburton Place.  They deal with labor issues

16   involving --

17             THE COURT:  So here's my -- my question.  The

18   question that I typically ask about names is I'm usually

19   thinking of people.  So the witness questions, the following

20   people may testify, or you might hear testimony about them,

21   and then I list all the names.  And then I ask, are any of

22   you related to any possible witnesses I've just listed or do

23   you know any of these people?  Because I could -- in some

24   cases, you could have someone who didn't testify, but there's

25   a lot of testimony about.  And if a juror were related to

1    that person or knew them well, that would be something we

2    would all want to know, but you can't really be related to

3    the joint task force.

4           MR. KILEY:  You can't be, and it is -- frankly,

5    it's unlikely that any of the jurors are going to have

6    interacted with them.

7           THE COURT:  What would you want me to ask about the

8    Joint Task Force, Magical Elves, Mission Productions, and the

9    Work Exchange Team, which are the nonpersons that are listed?

10          MR. KILEY:  So the Work Exchange Team is also

11   connected to this first issue that they deal with in March.

12   The Work Exchange Team is an Atlanta-based entity that was

13   providing volunteers to -- were providing services that were

14   the responsibilities of the licensee.  They were not being

15   paid.  They were, instead --

16          THE COURT:  Do you want me to ask have any of you

17   worked for or are familiar with the Joint Task Force, Magical

18   Elves, Mission Productions, or Work Exchange Team?

19          MR. KILEY:  That would be fine.  And again, only

20   because I'm standing on this issue, Your Honor, when I read

21   our discussion on this issue and we convinced you that we

22   should say IATSE.

23          THE COURT:  I'm going to list the whole name and

24   say IATSE.

25          MR. KILEY:  Local 11, which you spoke of in the

```
 1    same breath.  Local 11 is one of the locals within IATSE.  It
 2    deals only with stage hands.  And I know, in the discussion
 3    that we had, you described a sequence of things.
 4              THE COURT:  It's a sequence of people who work for
 5    Local 11 IATSE?
 6              MR. KILEY:  Local 11 is stage hands.
 7              THE COURT:  I see.
 8              MR. KILEY:  I don't know that it matters, Your
 9    Honor, but I know in the transcript that I read there are a
10    series of things.  It's the stage hands local, within the
11    international.
12              THE COURT:  Well, should I -- is stage hands all
13    they're going to hear about in this case, or more?
14              MS. KAPLAN:  I think they may hear more.  I would
15    just say IATSE Local 11.
16              THE COURT:  IATSE Local 11 is a labor organization,
17    and not, say, representing this list of people.  What I have
18    right now, which I read to you the other day, was the
19    International Alliance of Theatrical Stage Employees, Local
20    11, which you might hear referred to as IATSE, or just Local
21    11, is a labor organization representing and then I listed,
22    technicians, artisans, craftspersons in the entertainment
23    industry in Boston, including bopitty bop.
24              MR. KILEY:  And it's true as to IATSE, but if it's
25    IATSE Local 11.  Local 11 has a component.  I don't know that
```

1    it's going to matter here, Your Honor, but I wanted to point

2    it out to you for accuracy.

3              THE COURT:  Do you want me to say what I read to

4    you on Friday, or something different?

5              MS. KAPLAN:  That's fine, Your Honor.

6              THE COURT:  What do you want?

7              MR. KILEY:  I'm fine with it, Your Honor.  I told

8    you I would look at the transcript and fill you in on any

9    nits.

10             THE COURT:  Okay.  So last question is, what I tell

11   the jurors about how long it will be.  About two weeks?

12             MR. KETTLEWELL:  Yes, Your Honor, I think that's

13   fair.

14             MS. KAPLAN:  I think that's fine, Your Honor.

15             THE COURT:  Maria, do you know what the -- -

16             THE DEPUTY CLERK:  They're dropping off the

17   notebooks right now, so probably about 9:30.

18             THE COURT:  Okay.

19             THE DEPUTY CLERK:  I can check.

20             MS. KAPLAN:  Your Honor, there was one other issue

21   that we wanted to -- we e-mailed Ms. Simeone about this

22   morning, talking to you about -- at sidebar, if possible.

23             THE COURT:  Okay.  Ms. Simeone hasn't been able to

24   get into her e-mail today, so I haven't seen that.

25             But give me one minute.  Why don't you just call

1    Jim and see where we are, in terms of --

2              (Discussion off the record.)

3              (The following discussion was sealed at 9:20 a.m.

4              and held at the bench.)

5              MS. KAPLAN:  So late Friday, we moved to file a

6    motion to a brief response to your order, the Court's order.

7              THE COURT:  I haven't seen it.

8              MS. KAPLAN:  And you haven't filed it, because we

9    requested leave to file it under seal.

10             THE COURT:  In fact, just to the extent that there

11   are -- the sidebar is sealed.  To the extent the issues arise

12   for any of you, to the extent that order that the motion has

13   been under seal, you don't need to file a separate motion to

14   seal.  It's sealed.  And you can just send it to Ms. Simeone

15   for filing under seal.  And in fact, I think what I'll -- in

16   the event -- I know that there will be a lot more things like

17   that, but I'll try to find an e-mail address that I'll get to

18   you later today, so you don't have to have that two-step

19   process, of having to send it to Ms. Simeone, so at night I

20   can look at it.  She's not checking her e-mail and doesn't

21   have access.  So I didn't know about that.  So you can go

22   ahead and do that.

23             Hey, Maria, Maria?  Are you able to get -- you just

24   can't get it on this computer?  Or you can't get it on --

25             THE DEPUTY CLERK:  I think in this one, in this

```
 1   computer.
 2              THE COURT:  Send it to her and Ms. Montes.  And
 3   when you send things file under seal send it to both of them
 4   for now.
 5              MS. KAPLAN:  Okay.
 6              THE COURT:  Then I'll get it quicker, in case we
 7   have another e-mail address.
 8              MS. KAPLAN:  So it was just three points that we
 9   wanted to clarify and one of them was we have not taken the
10   deposition, we took the position initially we were going to
11   call Jesse du Bey, but since this all came about, we do
12   intend to call Jesse du Bey, but what I was trying to say at
13   sidebar the other day, was depending on how you ruled, we
14   were trying to make a decision about that.  So we do intend
15   to call Jesse du Bey, because we don't want know how you
16   intend to rule.  And we don't want to create a -- so in terms
17   of scheduling, I just want to give Your Honor a heads-up, we
18   have heard that next Wednesday, he would be available.
19              THE COURT:  A week and a half from today.
20              MS. KAPLAN:  So that's July 29th.  I don't know
21   whether we'll still be on our case or not, so we would like
22   permission to be able to call him out of order.
23              MR. KETTLEWELL:  I have no objection to that, Your
24   Honor.
25              MR. KILEY:  We have no objection.
```

1              MS. KAPLAN:  If that's what we decide to do, then.

2              MR. KILEY:  One thing that I would say is that I

3    would anticipate we would be filing our Rule 29 or making a

4    Rule 29 argument.  I don't know whether we have to wait until

5    Mr. du Bey is coming in their case.  That would be my -- if

6    we were going to take Mr. du Bey.

7              THE COURT:  I don't think it would be fair to the

8    Government to consider a Rule 29 motion when they had another

9    witness coming.

10             MR. KILEY:  That's what I'm saying, we'll wait on

11   the Rule 29 until after Mr. du Bey.

12             MR. KETTLEWELL:  Well, let's see where we are.  Who

13   knows.

14             MR. CINTOLO:  Did we get a notice on Evans?

15             MR. KETTLEWELL:  Yeah, I wanted to bring it to the

16   Court's attention, just talk about troubles.  Commissioner

17   Evans, I don't want to say this in open court, actually broke

18   his femur and was admitted to Mass. General on Friday.  He

19   had surgery and we're checking on his status, because he's

20   obviously a critical witness for us, but we're hopeful that

21   he'll be available in the course of the trial.

22             THE COURT:  How long is your case about, putting

23   aside du Bey?

24             MS. KAPLAN:  We think probably until early next

25   week until the middle of next week.

1          MS. BARCLAY:  So the timing issue may not even be

2     an issue, we just wanted to flag it.

3          THE COURT:  So he'll have been -- unless he has

4     amazing insurance, I assume he'll be kicked out of the

5     hospital before the middle of next week.

6          MR. KILEY:  The former police commissioner might

7     have some drag.

8          MR. KETTLEWELL:  We'll see.

9          THE COURT:  Okay.

10          MR. KETTLEWELL:  That's all I know.  I'm trying to

11     find out more.  I was told this on late Friday.

12          THE COURT:  Right.  I would think that -- I mean,

13     that's a bad bone to break as an adult, but you know, you're

14     talking about almost -- you're talking at about two weeks

15     from when it happens.

16          MR. KETTLEWELL:  All right.  I get it.  I agree.

17          THE COURT:  Okay.

18          MR. KETTLEWELL:  Do you want us to raise any issues

19     about the first witnesses now, or do you want to wait until

20     we get the jury?

21          THE COURT:  Wait until we get the jury and then I

22     thought there's a couple of things -- we could talk about

23     things like that and then we --

24          MR. KETTLEWELL:  Do you think we're going to open

25     today, Judge?

1        THE COURT:  No.  My plan is we'll pick the jury,

2   and then send them home.  If I didn't make that clear, I

3   apologize, I thought I made that clear the other day.

4   Tomorrow we open and preliminary instructions and opening.

5        MR. KETTLEWELL:  All right.  Thank you.

6        MR. CINTOLO:  Your Honor.  Are they ready to come

7   in?

8        THE COURT:  Oh, in here.

9        MR. KETTLEWELL:  Not yet.

10       THE COURT:  I think we're close, but they're not at

11   the door now.

12       MR. CINTOLO:  Okay.  I just have to go to the men's

13   room.

14       THE COURT:  Go right ahead.

15       Ms. Kaplan, maybe if you guys come back.  You said

16   you had three points.

17       MS. KAPLAN:  Yes.

18       THE COURT:  So is just one du Bey, or does that

19   encompass?

20       MS. BARCLAY:  In the document we asked for

21   permission to file under seal, there are three points, so

22   we'll file that.

23       THE COURT:  I see.  The only one you wanted to flag

24   right now was just the scheduling.  I got it.

25       MR. KETTLEWELL:  Thank you, Your Honor.

1        MR. KILEY:  Thank you.

2        (Sealed bench conference concluded at 9:26 a.m.)

3        MS. BARCLAY:  Your Honor, did I hear that we could

4    have five minutes?  Is that --

5        THE COURT:  Yeah.

6        MS. BARCLAY:  Okay.  Thank you.

7        THE COURT:  Ms. Barclay, 9:45 is when Jim says

8    we'll have jurors.

9        MS. BARCLAY:  All right.  Thank you.

10        (Court in recess at 9:26 a.m.

11        and reconvened at 9:29 a.m.)

12        THE COURT:  Mr. McAlear reports that he's going to

13    start bringing the jurors up.  I noticed -- I think you may

14    have e-mailed in two more names, Ms. Kaplan and Ms. Barclay.

15    I just want to verify that.  Ms. Armstrong from Verizon

16    Wireless and Ms. Rapson from Sprint, right?

17        MS. KAPLAN:  Yes.

18        THE COURT:  Okay.  And then I just want to make

19    sure that I get it right.  It's Hannah Beller, right?

20        MS. BELLER:  Yes, Your Honor.

21        THE COURT:  Okay.  Paralegal.  I just wanted to --

22        MS. KAPLAN:  It's Orkila, I understand.

23        THE COURT:  Orkila.

24        MR. KETTLEWELL:  Your Honor, we have a paralegal

25    who's going to be running the computer and posting things.

1    His name is Brad Carvalo.  I'm not sure that made it on the

2    list.

3              THE COURT:  A little louder.

4              MR. KETTLEWELL:  Brad Carvalo, C-a-r-v-a-l-o.

5              THE COURT:  Okay.  He's your paralegal,

6    Mr. Kettlewell?

7              MR. KETTLEWELL:  He is, Your Honor.  He is going to

8    be assisting all of us.

9              MR. KILEY:  Yes.

10             THE COURT:  Mr. Kiley.  The Joint Task Force on The

11   Underground Economy, should I call that the Massachusetts

12   Joint Task Force on the -

13             MR. KILEY:  I think it was the governor's.  It's

14   the governor's task force, Your Honor.

15             I'll give you the complete title, Your Honor.  It's

16   the Governor's Joint Task Force on The Underground Economy.

17             THE COURT:  Okay.  Then that's what I'll call it.

18             If it makes a difference, all of you, I think the

19   way that the clerk's office will be seating the members of

20   the venire, is the first one, two, three rows all the way

21   across and then the two benches in the middle in the fourth

22   row.

23             (Discussion off the record.)

24             THE COURT:  Mr. Cintolo, how about lifting up that

25   chair right there.  And put it over -- see if you can lift it

1    up over that black --

2              MR. CINTOLO:  Over there?

3              THE COURT:  This one?  Yes.

4              MR. CINTOLO:  It will just block it.

5              THE COURT:  There you go.  Then people will walk

6    around it.  Thank you.

7              (Discussion off the record.)

8              (The prospective jurors enter the courtroom.)

9              THE COURT:  Which juror needs a notebook?

10   Ms. Simeone will give you a notebook, pad.  Do you have a

11   pen?  Everyone has a pen.  Everyone else has a pen and a pad?

12   Okay.

13             Good morning, everyone.  My name is Leo Sorokin.

14   On behalf of the federal court, I welcome you here today.

15   Before we talk about today's case, I want to speak to you

16   briefly about jury service.  I know many people dread it, but

17   it's one of the most fundamental parts of our criminal

18   justice system.  I realize that each of you probably has a

19   job or school to attend or family responsibilities, or any

20   number of other ways you were planning to spend today before

21   you were called to the courthouse.  Probably very few of you

22   were sitting at home, having breakfast this morning, just

23   hoping to be selected for federal jury duty.  I'm sure nearly

24   all of you had other plans, other things to do in your

25   individual lives, and I understand that.  But today, despite

all of those things, you came to the courthouse.  And just by
coming here this morning, you have already begun to do
something, not for yourself, but for your country.  That
might sound like an overstatement, but it's the truth.  And
on behalf of the Court, I thank you for doing that.

Each of you as a citizen of the United States and
with that citizenship comes both rights and responsibilities.
Our United States Constitution guarantees each person accused
of a crime the right to a trial by an impartial jury of his
or her peers.  That right means that, in every criminal case,
like the one we have here today, the question of whether the
Government has proven, beyond a reasonable doubt, that a
person is guilty, is determined by a fair and impartial cross
section of citizens drawn from the community, people like
yourselves, each of whom brings his or her own individual
perspective and life experience to the jury.

In our country, only a jury of citizens like
yourselves can stand in judgment of another person.  With
that right to a jury trial, a right which we all have, comes
a related responsibility.  We all have the responsibility to
serve on a jury.  By serving on juries, we give life to the
guarantee in the Constitution to the right to an impartial
jury drawn from citizens of all walks of life.  Without
people like you, willing to honor their responsibility to
serve on a jury, courts would be unable to ensure that the

1    Constitution's promise of a jury trial is fulfilled.  That's

2    why jury service applies to everyone.  That's why jury

3    service is so important and that is why you are here today.

4            Now, I would like each of you to promise to do

5    something, not for me, but for our country, and for every

6    person in it, including the defendants in the case that

7    brings us here today.  I ask each of you to promise to do

8    your best to be willing to serve as a fair and impartial

9    juror in this case.

10           Can you do that?

11           (Affirmative responses.)

12           THE COURT:  Thank you.  Before we begin the process

13   of selecting a jury in today's case, you might be wondering

14   who is in the courtroom.  So I want to introduce some of

15   those people first.  And as we go through this process this

16   morning, I'll be explaining to you about the case and the

17   schedule and the like.

18           So sitting in front of me is Ms. Simeone.

19   Ms. Simeone is a clerk in the courthouse and she will be

20   administering the oath to witnesses, she'll be administering

21   an oath in a moment to all of you.  She records the exhibits

22   that come into evidence and takes care of various other tasks

23   related to that.

24           To my right is Ms. Lopez, you see her typing away.

25   Ms. Lopez is the court reporter, she's making a record of

1    everything that occurs in the course of the trial.

2            Farther over to my right, you see my law clerks and

3    some law students who are interning with me this summer.

4            Ms. Simeone will now administer an oath to you.

5    That oath is simply a promise to answer all of the questions

6    that I will ask you in a moment truthfully.

7            Go ahead.

8            (The prospective jurors were duly sworn.)

9            THE COURT:  Thank you.  So let me first explain to

10   you today's case.  This is a criminal case.  The defendants,

11   Kenneth Brissette and Timothy Sullivan, are employees of the

12   City of Boston.  Boston Calling is a music festival held each

13   year.  The federal charges in this case arise from events

14   related to the Boston Calling festival held in September

15   2014, on Boston's City Hall Plaza.  The Boston Calling

16   festival is produced by a company called Crash Line

17   Productions.

18           The International Alliance of Theatrical Stage

19   Employees, Local 11, which you might hear referred to as

20   IATSE, or just Local 11, is a labor organization representing

21   technicians, artisans, and craftspersons in the entertainment

22   industry in Boston, including live theater, motion picture,

23   and television production, trade shows and other live

24   entertainment events.

25           In this case, the Government has charged

1  Mr. Brissette and Mr. Sullivan with two federal crimes.

2  Conspiracy to commit extortion and extortion.  The Government

3  alleges that Crash Line was the victim of these crimes --

4  essentially, the indictment alleges --

5            I think we're all set with the pads.  No problem.

6            Essentially, the indictment alleges that Mr.

7  Brissette and Mr. Sullivan insisted that Crash Line hire

8  members of Local 11 to work at the September 2014 Boston

9  Calling festival and that they induced Crash Line's consent

10 to their demands by wrongfully using Crash Line's fear of

11 economic harm.  The Government alleges that Crash Line's fear

12 of such harm arose from the fact that it was awaiting certain

13 permits and approvals it needed for the September 2014

14 concert and it was seeking an extension of a contract,

15 allowing it to conduct future concerts on City Hall Plaza.

16           Mr. Brissette and Mr. Sullivan each deny the

17 charges.

18           Now I'm going to ask you a series of questions and

19 your answers will help us select fair and impartial jurors

20 for this case.  When I ask you a question, I'll give you the

21 number of each question, so question one, question two,

22 question three, and so forth.  And if your answer to a

23 question is yes, or if you think your answer might be yes,

24 what I'd like you to do is, on the pad you have, just write

25 down the number of the question.  So, for example, if your

1  answer to question one was yes, just write down a one on that

2  pad.  And then if the -- you happen to answer yes to question

3  30, then write down 30, as well.  Whatever question numbers

4  your answer's to, write those numbers down, and when I'm done

5  asking questions, then what's going to happen is one by one,

6  I'll ask you to come forward, either if you wrote anything,

7  any questions down on your pad, or if there's anything else

8  you wish to bring to my attention.  And then you'll come

9  forward and I'll talk to you over here at what we call the

10  sidebar with the lawyers just to find out a little more

11  information about whatever it is that brought you up here.

12       Okay?

13       So question one is do you know either myself or any

14  of the court staff, Ms. Simeone, Ms. Lopez, or the law clerks

15  or interns you see to my right.  So if your answer to that is

16  yes, write down a one on your pad.

17       Question number two, the names of the assistant

18  United States Attorneys in this case, that is the lawyers

19  representing the Government are Laura Kaplan and Kristina

20  Barclay.

21       Ms. Kaplan and Ms. Barclay, would you please stand

22  and just turn toward the panel?

23       MS. BARCLAY:  Good morning.

24       MS. KAPLAN:  Good morning.

25       THE COURT:  Question two is are any of you related

1     to either of these attorneys, or do either of you know either

2     of these attorneys?

3               Question three.  Ms. Kaplan and Ms. Barclay work in

4     the United States Attorney's Office here in Boston.  Have any

5     of you had any dealings with the United States Attorney's

6     Office?

7               Question four.  Have you, a family member, or a

8     close friend ever been employed by the United States

9     Attorney's Office?

10              Question five.  Ms. Kaplan and Ms. Barclay will be

11    assisted in this case by Special Agent Kristen Koch of the

12    Federal Bureau of Investigation and Hannah Beller, a

13    paralegal in the United States Attorney's Office.

14              Maybe the two of you should just stand up.  Thank

15    you.

16              Are any of you related to Agent Koch, or do any of

17    you know her, or are you related to Ms. Beller or do you know

18    her?

19              All right.  Question six, as I mentioned, the

20    defendants in this case are Kenneth Brissette and Timothy

21    Sullivan.  First, Mr. Brissette, would you please stand and

22    turn toward the panel?

23              MR. BRISSETTE:  Good morning, everybody.

24              THE COURT:  And then Mr. Sullivan, would you please

25    stand and turn toward the panel?

```
 1              MR. SULLIVAN:  Good morning.
 2              THE COURT:  Are any of you related to Mr. Brissette
 3    or Mr. Sullivan, or know either of them?  That's question
 4    six.
 5              Question seven.  Attorneys William Kettlewell and
 6    Sara Silva represent Mr. Brissette.
 7              Mr. Kettlewell and Ms. Silva, would you please
 8    stand and turn toward the panel?
 9              MR. KETTLEWELL:  Good morning.
10              MS. SILVA:  Good morning.
11              THE COURT:  Are any of you related to either of
12    these attorneys or do you know either of them?
13              Question eight.  Mr. Kettlewell and Ms. Silva work
14    at a law firm in Boston called Hogan and Lovells.  Have any
15    of you ever had any dealings with Hogan and Lovells.
16              Question nine.  Have you, a family member, or a
17    close friend, ever been employed by Hogan and Lovells?
18              Question ten.  Attorneys Thomas Kiley and William
19    Cintolo represent Mr. Sullivan.
20              Mr. Kiley and Mr. Cintolo, would you please stand
21    and turn towards the panel?
22              MR. KILEY:  Hello.
23              MR. CINTOLO:  Good morning.
24              THE COURT:  Are any of you related to either of
25    these attorneys, or do any of you know any of them?
```

1         Question 11.  Mr. Kiley and Mr. Cintolo work at a

2    law firm called Cosgrove, Eisenberg, and Kiley.  Have any of

3    you had any dealings with that law firm?

4         Question 12.  Have you, a family member, or a close

5    friend, ever been employed by Cosgrove, Eisenberg, and Kiley?

6         Next part of question 12.  There are two other

7    lawyers, Attorney Kelley of Boston, who is a solo

8    practitioner, and Attorney Anthony Traini?

9         MR. KILEY:  Traini.

10        THE COURT:  Traini, who's a solo practitioner in

11   Providence.  They also represent Mr. Sullivan.  And if either

12   of you know them, either of those attorneys, if you're

13   related to those attorneys, or if you a family member or a

14   close friend have ever been employed by either of those

15   attorneys, please also answer yes to question 12.

16        Attorney Kelley's first name is James?

17        MR. KILEY:  James.

18        THE COURT:  James.  And now I'm going to read you a

19   list of names.  These are names of people either who will

20   testify in this trial, or about who you may hear testimony.

21   And after I -- I would like you to listen to the list

22   carefully.  And after you hear the list, I'm going to ask you

23   the following question, which is question 13, which is are

24   any of you related to any of these possible witnesses I've

25   just listed, or these people, or do any of you know,

1    personally, any of them.  That's question 13 and the names

2    are as follows.

3           Brian Appel, Boston; John Baros, Dorchester; Carole

4    Brennan, Boston; Elida, E-l-i-d-a, Carbajal, C-a-r-b-a-j-a-l,

5    from Grenada Hills, California.  Christopher Cook, Boston.

6    Derek Cunningham, Washington, D.C.  Maribeth Cusick, Concord,

7    Mass.  William Evans, Commissioner of Boston Police

8    Department.  Nicole Murati Ferrer, Boston; Colleen Glynn,

9    North Reading; Favour Jones, Marblehead; William Kenney,

10    Chelmsford; Kristen Koch, Special Agent, Federal Bureau of

11    Investigation.  Daniel Koh, Boston; Joyce Linehan, Boston;

12    Patricia Malone, West Roxbury; Lisa Lamberti Menino, Boston;

13    Steven Oare, O-a-r-e, Natick; David O'Connell, Los Angeles,

14    California.  Patricia Papa, Boston; Richard Rogers,

15    Charlestown; Joseph Rull, Norwell; Michael Snow, Melrose;

16    Lisa Strout, Boston; Martin J. Walsh, Boston; Jesse du Bey,

17    Germany.  Milady Ortiz, FBI; Mark Harrington, Holbrook;

18    Michael Galvin, Boston; Chris Keohan, K-e-o-h-a-n.  Dominique

19    Armstrong from Verizon Wireless, Hillary Rapson from Sprint.

20           John Catlin, former special agent, Department of

21    Labor, Boston; Thomas Foley, Boston.  Kenneth Fong, Boston.

22    Patricia Keough -- I'm sorry, Patrick Keough, K-e-o-u-g-h,

23    Boston; James Jake Sullivan, Boston; John Walsh, Boston.

24    Christopher Welling, Boston; Attorney Jed Nosal, N-o-s-a-l-e

25    [sic], Boston.

1          So question 13, the first part of it is the

2    following people you may hear about or testify and -- there's

3    one more name, Kate Norton.  So as to any of those people,

4    are any of you related to any of those people I've listed or

5    do you know personally any of those people?  That's question

6    13.

7          I'm also going to read to you a list of

8    organizations or groups or entities and if you know -- if

9    you've worked for or you're familiar with any of these

10   groups, then I would like you also to answer yes to question

11   13.  Bark Bark Media, the Governor's Joint Task Force on The

12   Underground Economy, Magical Elves Productions, Mission

13   Productions, or the Work Exchange Team.  So that's also a

14   part of question 13.  And if you know -- if you've worked for

15   any of those organizations, or you're familiar with them,

16   please answer yes to that question.

17          Question 14.  Have you ever been involved in any

18   lawsuit by or with any of the possible witnesses I've listed,

19   any of the lawyers in the US Attorney's Office, the federal

20   Government, Mr. Brissette, Mr. Sullivan, the City of Boston,

21   the FBI, or the Department of Labor?  That's question 14.

22          Question 15.  Mr. Brissette and Mr. Sullivan both

23   work for the City of Boston.  Have you, a family member, or a

24   close friend ever worked at Boston City Hall, or for the City

25   of Boston?

1     Question 16.  You will hear testimony about members

2  of the International Alliance of Theatrical Stage Employees,

3  also known as IATSE, or Local 11.  Have you, a family member,

4  or a close friend ever been a member of, worked for, or dealt

5  with IATSE?

6     Question 17.  Have you dealt with or are you

7  familiar with Orkila, LLC, Crash Line Productions, or Bill

8  Kenney Productions?

9     Question 18.  Have any of you heard or read

10  anything about this case, or do you know anything about the

11  case, Mr. Brissette, or Mr. Sullivan?

12     Question 19.  Do any of you have an interest in the

13  outcome of this case?

14     Question 20.  Do any of you know -- just look

15  around the room.  Do any of you know each other?

16     Question 21.  Have any of you formed an opinion

17  about this case, either based on things you knew or heard

18  before coming here today, or based on the brief description

19  of the case I provided earlier?

20     Question 22.  Have any of you expressed an opinion

21  about this case, or has anyone expressed an opinion to you

22  about this case?

23     Question 23.  Do any of you have any strongly

24  positive or strongly negative views about City of Boston

25  employees or public officials in Boston?

1        Question 24.  Do any of you have any strongly

2   positive or strongly negative views about labor unions?

3        Question 25.  Have you, a family member, or a close

4   friend ever held public office or worked for an elected

5   official?

6        Question 26.  Are you aware of any bias, prejudice,

7   or other reason that would make it difficult for you to serve

8   as an impartial judge of the facts in this case?

9        Question 27.  Is there anything about the facts or

10  the parties in this case that might make it difficult for you

11  to be fair and impartial?

12       Question 28.  Have you ever worked for or attended

13  the Boston Calling music festival?

14       Question 29.  Are you, a family member, or a close

15  friend trained or experienced in large event planning or

16  concert promotion?

17       Question 30.  In the course of your work, do you

18  frequently seek permits or approvals from public officials?

19       Question 31.  Did any of you work on or otherwise

20  know about the filming of the reality TV show *Top Chef* in

21  Boston in 2014?

22       And if you -- the following question you should

23  also answer yes to question 31.  Have you a family member or

24  a close friend been a member or worked for Teamsters local

25  25, Charlestown.  So if you answered yes to that, question

31.

So now I want to explain to you some general principles of law the jury must follow in a criminal trial. In the United States, a person accused of a crime is presumed innocent.  That means Mr. Brissette and Mr. Sullivan are innocent as they sit here before you today.  The fact they have been indicted of a crime is not proof of that crime. It's not evidence of anything at all.

Neither Brissette nor Mr. Sullivan can be found guilty, unless their guilt is proven in this courtroom beyond a reasonable doubt, a determination that will be made by the jury we select here today.  Mr. Brissette and Mr. Sullivan do not have to say or do anything during this trial.  And if they do not, the jury may not consider their silence at all.

The Government brought the charges.  The Government bears the burden to prove the charges beyond a reasonable doubt.  That is a very high standard of proof, the highest known in our legal system.  These principles are some of the most fundamental principles in our legal system.

Question 32.  Would any of you have any difficulty honoring those principles?

Question 33.  Do any of you have any feelings about the defendants' presumption of innocence that might interfere in any way with you serving as a juror?

Question 34.  Do any of you have any feelings about

1    the Government's burden of proof beyond a reasonable doubt

2    that might interfere in any way with you serving as a juror?

3              Question 35.  As I explained, Mr. Brissette and Mr.

4    Sullivan have a Constitutional right not to testify in this

5    case.  No inference of guilt or anything else may be drawn

6    from the fact that a defendant does not testify.  For you to

7    draw such an inference would be wrong and would violate your

8    oath as a juror.

9              Would any of you hold it against Mr. Brissette or

10   Mr. Sullivan if either one of them did not testify, despite

11   my instructions that you not do so?

12             Question 36.  The law requires that each juror must

13   follow my legal instructions, whether or not you personally

14   agree with the wisdom of the law as I describe it.  And you

15   must disregard any other ideas, notion, or beliefs about the

16   law that you may have encountered.

17             Would any of you be unwilling to apply the law as I

18   explain it to you?

19             Question 37.  Under the law, each juror must render

20   a verdict based solely on the evidence presented at trial in

21   the courtroom.  Jurors may not discuss the case with other

22   people until after they return a verdict.  Jurors may not

23   conduct their own research during the trial, whether on the

24   Internet, or in person.

25             Would any of you have any difficulty following this

1   general principle?

2           Question 38.  Another basic legal principle we've

3   already touched upon requires each juror to serve fairly and

4   impartially.  To serve fairly and impartially as a juror

5   means to hear the evidence in this case and decide its

6   outcome without bias, in favor of, or prejudice against

7   either side, any witness, or any other material matter.  It

8   means to base any verdict in this case on the evidence

9   presented in the courtroom during the course of the trial and

10  the law as I explain it to you, not on anything that you have

11  heard or read outside of the courtroom and not on other

12  factors, such as the identity of the defendant or the race of

13  the defendant, or any witness in this case.

14          With that in mind, will any of you have any

15  difficulty being fair and impartial?

16          Question 39.  Do you have any religious, moral,

17  political, or philosophical beliefs about sitting in

18  judgement of another person that would interfere with your

19  ability to serve as a fair and impartial juror in this case?

20          Question 40.  In determining whether a defendant is

21  guilty, you are not permitted to consider the possible

22  punishment, if any, that would follow a guilty verdict.

23  Would any of you have difficulty deciding the case without

24  considering what sentence might be imposed?  Would any of you

25  hesitate to find a defendant guilty because of the

1    possibility that I might impose a jail sentence in this case?

2         Question 41.  Have you, a family member, or a close

3    friend ever been employed by a law enforcement agency?  That

4    includes federal agencies like the FBI, the Department of

5    Labor, and the US Marshals Service, local or state police

6    departments, and any federal, state, or local corrections

7    office or sheriff's department?  So that's question 41, you,

8    a family member, or a close friend.

9         Question 42.  You will hear testimony in this case

10   from law enforcement officers.  The law requires you to weigh

11   that testimony the same as the testimony of any other

12   witness.  You may not give the testimony of a witness greater

13   weight or lesser weight simply because he or she is a law

14   enforcement officer.

15        Will any of you have difficulty complying with that

16   rule of law?

17        Question 43.  Have you, a family member, or a close

18   friend ever had dealings with any law enforcement officer or

19   agency, whether favorable or unfavorable, which might

20   influence your consideration of this case?

21        Question 44.  Have you, a family member, or a close

22   friend ever been involved in a lawsuit or claim of any kind

23   against any law enforcement officer or agency?

24        Question 45.  Have you, or any member of your

25   immediate family or close friend ever been involved in a

1    criminal case in any Court as a victim, a witness, a lawyer,

2    a court employee, or a person charged with a crime?

3            Question 46.  Have you ever served in any Court as

4    a juror in a criminal or civil case, or as a member of a

5    grand jury?

6            Question 47.  Do any of you have any difficulty

7    hearing?

8            Question 48.  Do any of you have any difficulty

9    understanding the English language?

10            Question 49.  Do any of you have a physical

11    disability, or are any of you taking any medication that

12    might affect your ability to concentrate or sit comfortably

13    during the course of the trial?

14            Let me tell you a little bit about question 50,

15    which is the schedule in this case.  All right?  So we expect

16    this trial to last about two weeks.  Trial will begin each

17    day at 9:00 a.m. and finish each day at 1:00 p.m.  Each day

18    we'll take a short break at 11 a.m.  we'll have some coffee

19    and refreshments for you in the jury room.  Once the jury

20    begins its deliberations, I'll expect the jury to stay until

21    five p.m. each day, until it reaches a verdict.

22            In a moment, I'll ask you if this case is a

23    hardship for any of you, but let me just go over that

24    schedule again.

25            After we pick the jury, the schedule for the trial,

1   we start every day at 9:00 a.m. sharp.  You'll sit from 9:00

2   a.m. to 1:00 p.m.  Every day we'll be done at 1:00 p.m.

3   sharp.  You can bank on that.  And at 1:00 p.m. each day

4   during the trial, you'll be able to leave the courthouse and

5   go about your business.  The trial will last about two weeks.

6   Once the jury receives the case to deliberate, then I'll ask

7   you to stay all day and I'll give you advanced notice of that

8   by at least a day or two.

9          Let me explain a little bit about hardship in terms

10  of the schedule, because that's what question 50 is.  The

11  fact that you have a job that you will miss to serve on a

12  jury is not normally a hardship.  Everyone has the

13  responsibility to serve on a jury when called.  A scheduling

14  conflict rarely constitutes a hardship.  Meetings or

15  appointments that can be changed, postponed or missed, are

16  not hardships.  A scheduling conflict is a hardship only if

17  it is something out of the ordinary that actually conflicts

18  with the trial schedule and cannot be postponed.  Here are a

19  few examples.  You have a wedding, a prepaid vacation, with

20  nonrefundable tickets, or nonelective surgery.

21         So in light of what I told you about the case, the

22  duration of the case and this schedule, does this schedule

23  for this case pose a serious and extraordinary hardship for

24  any of you?  If it does, question 50, write that down on your

25  pad.

1           Question 51.  This is the last question.  Is there

2     anything that I have not asked you about that might make it

3     difficult for you to decide this case fairly and impartially,

4     based on the evidence presented in court, and in the context

5     of the Court's instructions to you on the law?  That's

6     question 51.

7           So ladies and gentlemen, this is how we'll proceed

8     to the next stage of jury selection.  One by one -- you each

9     have a jury number.  Do you know what your juror numbers are?

10    It doesn't really matter.  In any event, I'll be starting

11    with, in the first row, the first person to my far left, so

12    you, sir, in the blue shirt.  What we're doing, one by one,

13    I'll ask you to come up to sidebar.  If you answered -- if

14    you wrote down any numbers, that is if you answered yes to

15    any questions, I want you to come up with your piece of paper

16    and your pad and then show me which questions you answered

17    yes to.

18          If you didn't answer yes to any question, but

19    there's something that you want to bring to my attention,

20    then you can come up when I come to you, but if there

21    isn't -- you didn't answer yes to any questions and there

22    isn't anything to bring to my attention then when I look --

23    when I turn to you, you can just say you pass and I'll move

24    on to the next person.  And we'll go through and I'll talk to

25    each of you, or those I need to one by one.  And then after

1    that, we'll move to the next step of jury selection.

2            So I ask for your patience during this process,

3    because it takes a little time, but people have individual

4    pieces of information to bring to my attention and the

5    attention of the lawyers that sometimes can be important.  So

6    I want to talk to them each one by one personally.  So I

7    thank you in advance for your patience and we'll proceed to

8    this next step.

9            Sir, do you have anything to bring to my attention?

10   Then come forward.

11           (Individual voir dire was held from

12           10:40 a.m. to 3:47 p.m.)

13           THE COURT:  So juror number 19, I excused her, I

14   spoke with her and she had some family commitments that she

15   hadn't raised with me before and that are the kinds of

16   reasons that I've excused other people, so I excused her, so

17   that's why she's gone downstairs, so juror number 63 has

18   taken her place.  So you are the jury.  So as I said before,

19   the schedule, every day, until the jury receives the case for

20   deliberations, we'll start at 9:00 a.m. sharp, finish at 1:00

21   p.m., when I say we're done at 1:00, I mean we're done at

22   1:00.  You can set your watch by it.  All right?

23           Ms. Simeone, in a moment, will take you out the

24   back door.  She'll take you behind the courtroom.  She'll

25   show you where the jury room is, she'll give you badges,

tomorrow morning when you get here, don't come up to this
courtroom, because we won't be in here, don't come up to my
courtroom, which is just down the hall.  You go up in the
back elevator, she'll show you how to do that, right up to
the jury number and you assemble in the jury room and then
Ms. Simeone, or the Court security officer will bring you in
at 9:00 a.m. to the courtroom where we'll begin the trial.
Okay?  We'll go from 9:00 to 1:00.

So the first think I'd ask you.  I know many of
you, maybe all of you, don't work in the Seaport District.
So we can't begin the trial tomorrow morning until everyone's
here.  We need all of you, we need me, we need the lawyers,
we need everybody.  So try to plan your schedule so that
you're here not to walk in to the jury room at 8:59 and 58
seconds, but enough time so that when we come in, when
Ms. Simeone comes in, you're ready to go, to come into the
courtroom at 9:00 a.m., so we can begin, because I'm very
much -- I'm very aware that your time is valuable and I want
to use the time you've given us efficiently, which means when
you're here, I want to go, take evidence from 9:00 to 1:00.
Okay?

You'll be done at 1:00, we'll go day-to-day, I'll
update you throughout the trial about our progress, it will
be about two weeks, as I told you.  Tomorrow morning, we'll
start with some preliminary instructions from me and opening

1    statements from the lawyers and then the evidence.  There are

2    just a couple of things to keep in mind now, before you

3    begin.  Okay?

4         First, keep an open mind.  You have not heard my

5    preliminary instructions, my final instructions, the opening

6    statements, closing statements, the evidence, you haven't

7    heard anything, so don't make up your mind about this case

8    until you've heard all the evidence.

9         Second, this is important, do not discuss anything

10   about this case with anyone, or conduct any of your own

11   research in this case.  Your role as the jury is a special

12   one.  You will have to decide this case based only upon what

13   happens in the courtroom.  So you cannot discuss the case

14   with anyone else, that even includes members of your family.

15   And you should not let anyone discuss the case with you.  You

16   may tell your family or your employer that you are on a jury

17   and how long the case may last and that's all.  You may not

18   tell them anything else about the case, until the trial is

19   over.

20        Do not discuss the case among yourselves, which --

21   just as you're not to discuss it with anyone else.  You may

22   not talk to one another about this case, until the trial

23   ends, and I direct you to begin your deliberations.

24        You're free to talk among yourselves about anything

25   you want, except the case or the people in it.  Okay?  All

1    right.  So tomorrow morning, get here in time to go, so we're

2    ready to go at 9:00 a.m.  We'll go from about 9:00 to 11:00,

3    we'll take a break at 11 o'clock, we'll have coffee and

4    refreshments for you, we'll be done at 1 o'clock, you'll be

5    on your way, and we'll go on that schedule.

6             All right.  Anything else from counsel before I

7    excuse the jury?

8             MS. KAPLAN:  No, Your Honor.

9             MR. KETTLEWELL:  No, Your Honor.

10            THE COURT:  All right.  All rise for the jury.

11            (The jury exits the courtroom.)

12            THE COURT:  Please be seated.  So there's -- I have

13   the suggestions from you about the limiting instruction.  I

14   think that's all really -- unless -- I haven't seen what you

15   referred to this morning, Ms. Kaplan, that you were going to

16   file Friday, but other than that, I think what makes the most

17   sense is just meet tomorrow morning, unless there's something

18   specific that you want to go over now.

19            MS. BARCLAY:  Nothing from the Government, Your

20   Honor.

21            MR. KILEY:  No, Your Honor.

22            THE COURT:  Anything else from Mr. Kettlewell?

23            MR. KETTLEWELL:  Well, Your Honor, I raised at the

24   sidebar, briefly during jury selection, in fact they're

25   starting with the *Top Chef* witnesses, so there will be some

1    issues about the scope of that testimony, we can talk about

2    that tomorrow at 8:30, if you wish, because they've notified

3    us that the first three witnesses are -- at least two of the

4    first three are *Top Chef* related witnesses.

5            THE COURT:  I think we can take that up tomorrow

6    morning.  One question that I had that I was just thinking

7    about, what exactly is the -- I was looking over, what's

8    the -- the property -- is the property just the wages paid to

9    the union people?

10            MS. BARCLAY:  It's the wages and benefits paid.

11            THE COURT:  The wages and benefits paid to them.

12    Because the indictment says wages and benefits to be paid and

13    then it repeats it in another format, I didn't understand

14    what it meant, if it was something else.

15            MS. BARCLAY:  Yeah, I think it's wages and benefits

16    is --

17            THE COURT:  So the property is the wages and

18    benefits paid to those, was it nine guys or whatever number

19    of guys it was?

20            MS. BARCLAY:  Yes.

21            THE COURT:  Okay.  That's the property at issue.

22    Okay.  All right.  Then how much -- what's the scope of the

23    issues on the *Top Chef*?  My question is this, should I meet

24    with you at 8:15 instead of 8:30?

25            MR. KETTLEWELL:  I think we can do it fairly

1    quickly at 8:30, Your Honor.

2              THE COURT:  Okay.  Fine.  See you at 8:30 in my

3    courtroom tomorrow morning.

4              (End of requested portion.)

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3

4          I, Rachel M. Lopez, Certified Realtime Reporter, in

5     and for the United States District Court for the District of

6     Massachusetts, do hereby certify that pursuant to Section

7     753, Title 28, United States Code, the foregoing pages

8     are a true and correct transcript of the stenographically

9     reported proceedings held in the above-entitled matter and

10    that the transcript page format is in conformance with the

11    regulations of the Judicial Conference of the United States.

12

13                    Dated this 22nd day of July, 2019.

14

15

16

17                    /s/ RACHEL M. LOPEZ

18

19

20    _____

21                    Rachel M. Lopez, CRR
                      Official Court Reporter

22

23

24

25